IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES FRANKLIN,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §          Civil Action No. 3:20-CV-1303-N
                                         §
UNITED STATES OF AMERICA, *et al.,*      §
                                         §
          Defendants.                    §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants' (collectively, the "Government") motion to dismiss and for summary judgment [24].[1]  The Court concludes that it lacks jurisdiction over most of Plaintiff Franklin's claims.  As to the remaining causes of action, Franklin fails to state a claim upon which the Court may grant relief.  Accordingly, the Court grants the Government's motion to dismiss in its entirety.

### I. THE ORIGINS OF THE DISPUTE OVER TAX PENALTIES

This case involves several claims by a taxpayer stemming from or related to tax penalties assessed against him by the Internal Revenue Service ("IRS").  The IRS determined that Franklin had failed to report income from a foreign trust for the tax years from 1998 to 2010.  D.'s Mot. to Dismiss 2 [24].  In response, it assessed over $400,000 in penalties against him.  Pl.'s Am. Compl. ¶¶ 22, 24 [18].  To satisfy this liability, the IRS

---

[1] Following the close of briefing on the motion to dismiss, the Government moved for leave to file a notice of supplemental authority [32].  To the extent the foregoing analysis relies on those authorities, the Court grants the motion.

has taken numerous steps, including levying on Franklin's property, garnishing his Social Security payments, and certifying his unpaid obligation to the State Department, resulting in the revocation of his passport. *Id.* ¶¶ 23–24, 27, 33. Franklin chose not to follow the normal path to contest the assessment of tax penalties, which is to pay the penalties and pursue a refund action under 26 U.S.C. § 7422. Instead, he has attempted to evade that exclusive path by a variety of end-arounds: He sought to obtain information via a Freedom of Information Act ("FOIA") request, attempted to secure a reduction in his debt via settlement, and asserted various administrative claims for relief. *Id.* ¶¶ 25, 28, 34–35, 37. The IRS refused to process Franklin's written Offer in Compromise ("OIC"), spoiling his hopes for a settlement of the debt, and rejected his other claims for relief. *Id.* ¶¶ 29, 31, 38–39.

At bottom, Franklin objects to the tax penalties because he believes the IRS failed to observe certain procedural requirements before making the assessment, rendering the penalties invalid. *Id.* ¶ 2. This assertion animates his first set of claims, most of them under Title 26 of the U.S. Code (the "Tax Code"), which rely on the invalidity of the underlying penalties. Franklin also asserts that the statute permitting the State Department to revoke a delinquent taxpayer's passport violates Fifth Amendment Due Process. *Id.* ¶ 77. Finally, Franklin seeks fees and costs under FOIA. He alleges that the IRS wrongfully withheld a requested document from him and finally produced it only in response to this lawsuit. *Id.* ¶ 87. The Government has moved to dismiss under Rules 12(b)(1) and 12(b)(6) for lack of jurisdiction or for failure to state a claim. Alternatively, the Government

requests summary judgment in its favor on any issue that the court cannot resolve in a motion to dismiss.

## II.  RELEVANT LEGAL STANDARDS

Sovereign immunity undergirds the Government's request that the Court dismiss Franklin's suit in its entirety.  This principle generally prohibits claims against the federal government or against its agents in their official capacity.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Congress may, however, waive the immunity, but courts construe such waivers narrowly.  *Lewis v. Hunt*, 492 F.3d 565, 571 (5th Cir. 2007) (noting that "no suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued") Absent a valid abrogation of sovereign immunity, a court lacks jurisdiction over an action against the federal government.  *Meyer*, 510 U.S. at 475.

Because sovereign immunity implicates a court's jurisdiction, the plaintiff in a suit against the government bears the burden of establishing that a waiver of sovereign immunity applies to each claim.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (observing that "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist").  In assessing its jurisdiction in the context of a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court may "weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Montez v. Dep't. of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  The court may consider either the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution

ORDER – PAGE 3

of disputed facts. *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

Rule 12(b)(6) permits a court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When addressing a rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). To survive dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, a plaintiff must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint, however, need not contain "detailed factual allegations." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### III. THE COURT LACKS JURISDICTION OVER
### PLAINTIFF'S "SECTION 6751(B) CLAIMS"

Franklin, in his response to the Government's motion to dismiss, groups several of his claims under the heading of "Section 6751(b) claims," referring to those predicated on the alleged procedural deficiency underlying the tax penalty assessments. Finding this convention helpful, the Court adopts this framework and addresses each claim in turn.

### A. Fifth Circuit Precedent Requires Dismissal of Franklin's Quiet Title Action

Franklin seeks to quiet title to property currently subject to liens filed by the IRS. Pl.'s Am. Compl. ¶¶ 58–61. He invokes 28 U.S.C. § 2410, which provides a right of action and waiver of sovereign immunity to quiet title to property on which the federal government claims a lien. *Id.* § 2410(a)(1).

Fifth Circuit precedent forecloses Franklin's claim. *McCarty v. United States*, 929 F.2d 1085 (5th Cir. 1991), involved a section 2410 action to quiet title to property encumbered by a tax lien. The taxpayer argued that the court should enter judgment in his favor because "the tax [underlying the lien] was not properly assessed from a procedural standpoint." 929 F.2d at 1087. The district court granted the government's motion to dismiss, reasoning that sovereign immunity deprived it of jurisdiction to entertain a challenge to the validity of the tax in a section 2410 action. *Id.* On appeal, the Fifth Circuit agreed, holding that a "taxpayer cannot contest the existence or validity of the tax assessment in an action under § 2410." *Id.* at 1088. The dismissed portion of the taxpayer's claim in *McCarty* exactly mirrors Franklin's section 2410 claim. Like the plaintiff in *McCarty*, Franklin alleges only that the IRS failed to observe procedural requirements in

ORDER – PAGE 5

the *assessment* of the tax penalties against him, rendering them invalid. Accordingly, the Court dismisses Franklin's quiet title claim for want of subject matter jurisdiction.

### B. The Court Lacks Jurisdiction Over Franklin's Section 7432 Claim

Franklin also seeks damages for the allegedly wrongful failure to release liens on his property. Pl.'s Am. Compl. ¶ 47. Section 7432 of the Tax Code provides a private right of action and waiver of sovereign immunity to seek damages against the federal government to remedy a knowing or negligent failure to release a lien when required by 28 U.S.C. § 6325. 28 U.S.C. § 7432(a). Section 6325, in turn, provides for the timely release of a lien on a taxpayer's property if the "Secretary [of the Treasury] finds that the liability for the amount assessed . . . has been fully satisfied or become legally unenforceable" or if the taxpayer furnishes — and the Secretary accepts — a bond securing payment of the assessed liability. 28 U.S.C. § 6325(a)(1)–(2). Franklin alleges that procedural deficiencies in the assessment of the tax penalties rendered the liability unenforceable from the start, requiring the Government to release the liens on his property under section 6325.

The Court lacks jurisdiction over Franklin's claim. The waiver of sovereign immunity in section 7432 does not extend to challenges to the validity of the assessment. *McIver v. United States*, 650 F. Supp. 2d 587, 592 (N.D. Tex. 2009) (citing *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636 (5th Cir. 2003)); *see also Pollinger v. I.R.S. Oversight Bd.*, 362 F. App'x 5, 12 (11th Cir. 2010) (holding that section 7432 does not "allow for actions regarding assessment of tax liability"). Franklin does not allege that the Secretary of the Treasury or any officer or employee exercising the Secretary's authority has found his tax liability unenforceable. In fact, the Government strenuously affirms the

ORDER – PAGE 6

validity of the underlying assessment.[2]  Franklin's theory of entitlement to relief rests upon *his* determination that the underlying tax penalty suffers from a fatal procedural defect; in other words, he seeks to test the validity of the assessment.  Section 7432, however, does not permit such a challenge.  Because the allegations supporting Franklin's claim fall outside the narrow waiver of sovereign immunity included in the statute, the Court lacks subject matter jurisdiction over the claim.

### C.  The Court Lacks Jurisdiction Over Franklin's Section 7433 Claim

Franklin seeks damages under another provision of the Tax Code, Section 7433. This section provides taxpayers with a cause of action to pursue damages for wrongful conduct by the IRS or its agents in the collection of taxes.  28 U.S.C. § 7433(a)–(b).

The Court lacks jurisdiction over this claim.  As in the case of claims for wrongful failure to release a tax lien under section 7432, a taxpayer may not use a section 7433 wrongful collection action to litigate the validity of the underlying assessment that gave rise to the allegedly improper collection activity.  *Gandy Nursery*, 318 F.3d at 636 (5th Cir. 2003) (citing *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994)).  As the Court has already noted, the allegation that the IRS failed to observe section 6751(b) procedural requirements in assessing penalties against Franklin constitutes a challenge to the validity of the assessment.  Fifth Circuit precedent makes clear that an attempt to bring such a claim under section 7433 falls outside the court's jurisdiction.  *Shaw*, 20 F.3d at 184.  Thus,

---

[2] The lack of any finding of unenforceability *by the IRS* distinguishes this case from, *Miklautsch v. Gibbs*, 1990 WL 236045 (D. Alaska Nov. 6, 1990), the sole authority that Franklin relies on for support of his section 7432 claim.

Franklin's section 6751(b) allegations fail to properly invoke the waiver of sovereign immunity in section 7433.

Franklin also raises a second, distinct, argument in support of his section 7433 claim.  He submitted two Offers-in-Compromise to the IRS, each of which the agency returned as nonprocessable.  Ex. A to Pl.'s Am. Compl. 6–13, 18, 37, 43–49 [18-1].  In both OICs, Franklin raised the same section 6751(b) argument that he makes in this lawsuit, and he offered to settle the liability for a nominal sum.  *Id.* at 8, 11–13, 20, 47–49.  While he attempted to settle the matter, the IRS filed a lien on his property.  *See id.* at 27.  This chain of events, Franklin contends, constitutes improper collection activity entitling him to damages under section 7433.

While the Fifth Circuit has never considered such a claim, the well-reasoned opinions of courts in other circuits suggest that such a claim falls outside the sovereign immunity waiver in section 7433.  *Addington v. United States*, 75 F. Supp. 2d 520 (S.D.W. Va. 1999) serves as a good example.  In that case, the taxpayer contested the validity of the liability the IRS sought to collect, and the IRS returned his OIC without processing it.  *Id.* at 522.  Shortly thereafter, the IRS levied on the taxpayer's property, and the taxpayer brought a section 7433 action seeking damages for this allegedly improper collection activity.  *Id.* 522–23.  The court rejected the claim.  First, the court questioned whether it even possessed the power to compel the IRS to engage in a compromise that it had previously rejected.  *Id.* at 524 (citing *Carroll v. IRS*, 14 A.F.T.R..2d 5564 (E.D.N.Y. 1966) ("The decision to accept or reject a compromise offer by its nature involves the discretion of administrative authority and [cannot] be compelled by any action for a mandatory

injunction.")).   More fundamentally, the taxpayer's ultimate objection concerned the

validity of the underlying tax.  *Id.* at 523–24.  Permitting such an action under section 7433

would "'allow taxpayers to circumvent' the requirement[]" that they pursue refund suits to

challenge improper assessments.  *Id.* at 524 (quoting *Gonsalves v. IRS*, 975 F.2d 13, 16

(1st Cir. 1992)).  The court held that the OIC allegation could not support a 7433 claim.

*Id.*

Franklin's section 7433 claim based on the return of his OICs also fails.   The

relevant factual allegations in this case bear remarkable resemblance to those made by the

taxpayer in *Addington*.  The Court agrees with the reasoning in that case.  As evidenced by

the substance of the OICs he submitted, Franklin ultimately rejects the validity of the tax

penalties and has sought to use the OIC process to litigate this contention.  He now seeks

to use a section 7433 claim to test the validity of the tax assessment in this action, thereby

circumventing the well-established policy that such challenges should come only via the

mechanism of a refund suit.  Accordingly, the Court concludes that it lacks jurisdiction

over the entirety of Franklin's section 7433 claim.

### D.  The Court Dismisses Franklin's Declaratory Judgment Action

Franklin includes a general request for declaratory relief as provided for in the

federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  Pl.'s Am. Compl. ¶¶ 63–

64.

The plain language of the DJA prohibits this court from entertaining this action.

The DJA permits federal courts to "declare the rights and other legal relations of any

interested party seeking such declaration" in a "case of actual controversy" within the

court's jurisdiction.  *Id.* § 2201(a).  This grant of authority, however, does not extend to cases "with respect to Federal taxes."  *Id*.  The Fifth Circuit has held that attempts by taxpayers to challenge the validity of a tax assessment via declaratory judgment actions runs afoul of this express limitation in the DJA.  *McCarty*, 929 F.2d at 1088.  Because Franklin's request for declaratory relief includes no additional allegations beyond those already considered, the Court holds that it lacks jurisdiction to render declaratory judgment in this case "with respect to Federal taxes."

### E. The Court Lacks Jurisdiction to Review the IRS's Action Under the APA

Franklin also seeks review of the assessment of the tax penalties and return of his OICs under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*  The APA creates a cause of action allowing a person aggrieved by agency action to obtain judicial review.  *Id.* § 702.  Section 702 of the APA includes a waiver of sovereign immunity, but this waiver only applies where not limited by another, more specific provision.  *Id.*; *McCarty*, 929 F.2d at 1088.

A taxpayer may not bring an action under the APA to challenge the validity of a tax assessment.  The Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, incorporated in the Tax Code, provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person," except in the case of specific provisions of the Tax Code not relevant in this case.  *Id.* § 7421(a).  The "manifest purpose of [the AIA] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund."  *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7

(1962). The Fifth Circuit has held that the AIA bars challenges to the validity of a tax assessment under the APA. *McCarty*, 929 F.2d at 1088.

The AIA forecloses Franklin's APA challenge based on the alleged procedural defect in the tax penalties assessed against him. This allegation constitutes a challenge to the validity of the assessment itself. As *McCarty* makes clear, a federal court lacks jurisdiction to consider a challenge to the validity of a tax assessment styled as an APA suit. Accordingly, the Court concludes that this allegation cannot support an APA challenge.

Franklin also alleges that the IRS improperly failed to consider his OIC, and he asks the court to review that action under the APA. Franklin sent two OICs to the IRS, offering a nominal settlement and reiterating his contention that procedural defects rendered the assessments against him invalid. Ex. A to Pl.'s Am. Compl. 6–13, 43–49. The IRS returned these offers without accepting them for processing. *Id.* 18, 37. According to Franklin, when the IRS accepts an OIC for processing, it must cease certain collection activities — including levying on the taxpayer's property — while the OIC remains under consideration. Pl.'s Resp. to D.'s Mot. to Dismiss 15 [28] No such suspension of collection activities occurs when the IRS returns an OIC as nonprocessable. *Id.* Franklin asks this Court to review the return of his OICs, contending that the IRS abused its discretion in refusing to accept them for consideration.

The AIA prevents the court from reviewing the IRS's actions in this case. Actions of the IRS do not fall entirely outside the purview of the APA; courts may properly review some IRS actions and should hesitate in accepting the contention — often raised by the

ORDER – PAGE 11

Government in tax cases — that "no challenge to [the IRS's] actions is ever outside the closed loop of its taxing authority." *Cohen v. United States*, 650 F.3d 717, 726–27 (D.C. Cir. 2011) (en banc).  In this case, however, Franklin primarily objects to the return of his OIC because that action prevented a suspension of collection activities from coming into effect.  Assuming without deciding that the Court even has the power to interfere with the IRS's largely discretionary compromise process, the Court could offer Franklin no relief beyond directing the IRS to *process* his OIC.  The agency would retain substantial discretion to reject his OIC, but such an injunction would prohibit ongoing collection actions against Franklin in the meantime.  The AIA, prohibiting as it does any suit "for the purpose of restraining the assessment or collection of any tax," forbids review under these circumstances.  Having concluded that the two bases asserted to support review under the APA run afoul of a more specific provision of the Tax Code, the Court dismisses the entire claim for want of jurisdiction.

## F. The Court Dismisses Franklin's Challenge to the Revocation of His Passport

Franklin seeks judicial review of the certification of his delinquent liability to the State Department — which resulted in the revocation of his passport.  Pl.'s Am. Compl. ¶¶ 69–74.  Section 7345 of the Tax Code provides a mechanism by which the IRS certifies seriously delinquent tax liabilities to the State Department.  26 U.S.C. § 7346(a).  The State Department, then, may revoke or limit the taxpayer's previously issued passport.  22 U.S.C. § 2714a(e)(2).  Section 7345 includes a private right of action permitting federal court review of the certification of a taxpayer's debt.  26 U.S.C. § 7345(e)(1).

ORDER – PAGE 12

The Court lacks jurisdiction over Franklin's section 7345(e)(1) claim. In support of this claim, Franklin reprises the same argument he made in his quiet title action. Section 7345 requires that the tax debt must be legally enforceable for certification to be proper. Because, according to Franklin, the tax penalties suffer from a fatal procedural defect, they have always been unenforceable. Franklin urges the Court to reverse the certification of the allegedly unenforceable debt. The Court concludes that the same policy considerations that led the Fifth Circuit to hold that taxpayers may not contest the validity of an assessment in a quiet title action apply with equal force to a section 7345(e) claim such as this. The Court lacks jurisdiction over this claim.

### IV. THE COURT LACKS JURISDICTION OVER FRANKLIN'S EIGHTH AMENDMENT CLAIM AND DISMISSES HIS FIFTH AMENDMENT CHALLENGE

Franklin advances two constitutional claims, seeking a declaratory judgment or an injunction[3] as to each. First, Franklin claims that the penalties assessed against him violate the Eighth Amendment's Excessive Fines clause. Pl.'s Am. Compl. ¶ 80. Second, Franklin argues that the statutory scheme permitting the State Department to revoke a delinquent taxpayer's passport violates the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 76–79.

---

[3] Franklin asks for only a declaratory judgment in the body of his Amended Complaint. Pl.'s Am. Compl. ¶ 79. In the section title "Summary Overview," however, he asks the court to render "declaratory and/or injunctive relief" to remedy the alleged constitutional violation. *Id.* ¶ 13. Accordingly, the Court will construe the complaint as a request for both forms of relief.

ORDER – PAGE 13

### A. *The Court Must Consider Statutory Limitations on Its Jurisdiction in Tax Cases*

Two relevant statutory provisions limit the power of federal courts to render the relief requested in cases related to federal taxes. The Declaratory Judgment Act ("DJA") empowers federal courts to "declare the rights and other legal relations of any interested party" to any "case of actual controversy within its jurisdiction, *except with respect to Federal taxes*." 28 U.S.C. § 2201(a) (emphasis added). This limitation goes to the court's jurisdiction. *Rivero v. Fidelity Invs., Inc.*, 1 F.4th 340, 345 (5th Cir. 2021). And, as noted previously, the Tax Code's AIA provision limits the jurisdiction of the federal courts to entertain lawsuits restricting the collection or assessment of federal taxes. The Fifth Circuit has agreed with the Supreme Court that the limitation in the DJA applies at least as broadly as the AIA. *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)). In fact, a recent Fifth Circuit decision implies that the limitation in the DJA may restrict the jurisdiction of a court even further than the AIA. *Rivero*, 1 F.4th at 345–46 (suggesting the AIA would not have applied on the facts of the case but holding that the tax exception to the DJA rendered the District Court without jurisdiction to provide declaratory relief). Because the tax exception to the DJA goes at least as far as — and perhaps further than — the AIA, the foregoing analysis will focus on the latter.

### B. *The Court Lacks Jurisdiction Over Franklin's Eighth Amendment Challenge*

The Court lacks jurisdiction over Franklin's Excessive Fines Clause challenge. Enjoining collection of the tax penalties or declaring that the assessment itself violated the Eighth Amendment would, by definition, restrain the collection of a tax. Merely couching

ORDER – PAGE 14

an argument against the validity of a tax assessment in constitutional terms will not allow a court to entertain the claim in contravention of the AIA. *See, e.g., Bob Jones Univ.*, 416 U.S. at 736–37. Franklin can properly raise this claim in a refund suit. Accordingly, the Court dismisses the Eighth Amendment challenge as beyond its jurisdiction.

### C. The AIA Does Not Foreclose Review of Franklin's Fifth Amendment Claim

The State Department's authority to revoke Franklin's passport comes from a 2015 act of Congress called the Fixing America's Surface Transportation Act ("FAST Act"), Pub. L. 114-94, 129 Stat. 1312 (2015). The FAST Act amended the Tax Code to require the IRS to certify unpaid tax liabilities exceeding $50,000 (indexed to inflation) to the State Department as "seriously delinquent tax debts." 26 U.S.C. § 7245(a)–(b). The definition of "seriously delinquent" incorporated key procedural safeguards by requiring that the debt must have already given rise to a lien or levy to qualify. 26 U.S.C. § 7345(b)(C). The FAST Act prohibited the State Department from issuing a passport to the tax debtor whose liability had been certified and empowered it to revoke any previously issued passports in the taxpayer's name. 22 U.S.C. § 2714a(e)(1)–(2). Upon satisfaction of the liability, the statute required the IRS to decertify the debt as promptly as it must release a lien under section 6325 of the Tax Code. 26 U.S.C. § 7345(c).

By its plain terms, the AIA would ordinarily apply to this claim. First, the Court notes that the means by which a taxpayer may have his passport reinstated substantially all involve satisfying the tax debt. Second, the provisions of the FAST Act largely implement the recommendations in a Government Accountability Office ("GAO") report from 2011 focusing on tax collection. *See* U.S. GOV'T ACCOUNTABILITY OFF., GAO 11-272,

ORDER – PAGE 15

FEDERAL TAX COLLECTION: POTENTIAL FOR USING PASSPORT ISSUANCE TO INCREASE COLLECTION OF UNPAID TAXES 17 (2011).  That report urged Congress to consider conditioning passport issuance on tax compliance to "generate substantial collections of known unpaid federal taxes."  *Id.* at 16.  Based on the statute's structure and history, the Court concludes that an injunction against the Secretary of State requiring reinstatement of Franklin's passport would constitute a restriction on collection activity, in contravention of the AIA.

The Supreme Court has, however, carved out an exception to the AIA where the aggrieved party would not have an adequate alternative remedy outside the proceeding before the court.  *South Carolina v. Regan*, 465 U.S. 367, 378 (1984).  In *Regan*, South Carolina sought to test the constitutionality of a change to the Tax Code that conditioned the tax-exempt status of state-issued debt securities on registration of the bonds.  *Id.* at 370–71.  Because bondholders, not the issuing state or municipality, pay taxes on taxable debt securities, South Carolina could not bring a refund action itself.  *Id.* at 379–80.  The only conceivable mechanism to challenge the statute — issuing unregistered bonds and relying on a purchaser to bring a refund suit to test the propriety of the statute — involved substantial uncertainty and could not constitute an adequate alternative remedy.  *Id.* at 380–81.  While some divergence exists between the circuits as to the breadth of the holding in *Regan*, the Fifth Circuit recently noted that some "circuits — including ours, though we have not discussed *Regan* at length — view the exception more broadly."  *In re Westmoreland Coal Co.*, 968 F.3d 526, 536 (5th Cir. 2020)

Franklin's Fifth Amendment challenge may proceed under the *Regan* exception. Franklin argues that the structure of the passport revocation scheme means that no adequate alternative remedy exists to advance his constitutional challenge. The AIA otherwise prohibits him from challenging the statute without first satisfying the obligation. If he does so, however, the IRS will need to decertify the debt, resulting in a reversal of the revocation. Thus, Franklin could challenge the assessment through a refund suit, but the decertification of his tax debt would render his constitutional challenge moot. Deprived of the opportunity to present his constitutional challenge via a refund suit, Franklin lacks an adequate alternative to this action, and the *Regan* exception to the AIA applies to this claim.

### D. Franklin's FAST Act Challenge Fails, Warranting Dismissal Under Rule 12(b)(6)

*1. Procedural Background.* — The Government has requested dismissal under Rule 12(b)(6) or, alternatively, summary judgment pursuant to Rule 56. Other federal district courts to have considered the constitutionality of the FAST Act have proceeded both under Rule 12(b)(6) and under Rule 56. Because the inquiry before us does not — in the main — depend on the development of the factual record, the Court elects to proceed under the Rule 12(b)(6) framework.

Franklin alleges that the IRS certified his tax debt to the State Department and that, subsequently, the State Department revoked his passport. Pl.'s Am. Compl. ¶ 27. He objects to the constitutionality of the statutory provisions authorizing this revocation as violative of his procedural and substantive Due Process rights.[4] Specifically, Franklin

---

[4] Franklin objects to the provision facially and as applied. He makes no allegations from which the Court can infer that the IRS or State Department has treated him differently than

contends that the Supreme Court has recognized the right to travel internationally as a fundamental right, triggering strict scrutiny of any law abridging that right. The Court disagrees, holding that no precedent clearly establishes the right to international travel as fundamental and that the FAST Act withstands rational basis review.

   *2. Procedural Due Process.* — Franklin's procedural due process challenge fails as a matter of law. In his amended complaint, Franklin merely asserts that the current procedures used to revoke a taxpayer's passport pursuant to the FAST Act violate procedural due process; he does not specifically identify the property or liberty interest deprived through these procedures. *See* Pl.'s Am. Compl. ¶ 78. The Supreme Court has previously rejected a vested rights approach to the issuance or revocation of a passport by affirming that the Secretary of State can exercise substantial discretion in issuing or revoking travel documents. *See Haig v. Agee*, 453 U.S. 286, 306 (1981). Even if due process demanded a predeprivation hearing, a taxpayer subject to passport revocation would have an opportunity to make his case before certification to the State Department. While the FAST Act itself makes no provision for a predeprivation hearing, only those taxpayers subject to a properly noticed lien or on whose property the Government has levied face passport revocation. The mechanism of the Collection Due Process hearing gives such a taxpayer ample opportunity to contest his tax debt prior to certification to the State Department. Accordingly, the Court rejects Franklin's procedural due process challenge.

---

any other taxpayer whose debt meets the statutory criteria. As such, the Court limits its analysis to the facial unconstitutionality of the FAST Act.

*3. Substantive Due Process.* — The Fifth Amendment prohibits action by the federal government that works a deprivation of "life, liberty, or property without due process of law."  U.S. CONST. amend. V.  This due process protection includes procedural and substantive components.  Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Courts analyzing a substantive due process challenge must first identify the proper level of scrutiny to apply.  As a default, courts apply rational basis review — asking whether the challenged statute is rationally related to a legitimate governmental interest.  *Reyes v. N. Tex. Tollway Auth. (NTTA)*, 861 F.3d 558, 562 (5th Cir. 2017).  If the challenged law infringes on a right considered fundamental, however, strict scrutiny applies.  *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  Under strict scrutiny, the court asks whether the infringement resulting from the challenged statute is narrowly tailored to achieve a compelling governmental interest.  *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Fundamental rights subject to strict scrutiny must have a substantial basis in historical practice.  The Supreme Court has limited the recognition of fundamental rights to those deeply rooted in the history and tradition of the United States.  *Glucksberg*, 521 U.S. at 720–21.  Put another way, fundamental rights are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Id.* at 721 (internal quotation marks omitted).  Importantly, the Supreme Court has cautioned that

courts should hesitate to "break new ground in" expanding substantive due process protections "because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Id.* at 720.

Franklin contends that the revocation of his passport infringes on his right to international travel, a position the Government does not contest. The Court agrees that the FAST Act's passport revocation provision substantially interferes with Franklin's ability to travel overseas and turns to the question of whether this freedom constitutes a fundamental right.

The Supreme Court has treated the freedom of *interstate* travel as fundamental. Though not expressly identified in the Constitution, "freedom to travel throughout the United States has long been recognized as a basic right under the Constitution" and "fundamental to the concept of our Federal Union." *United States v. Guest*, 383 U.S. 745, 757–58 (1966). The Court has applied strict scrutiny to laws infringing on this right. *See Shapiro v. Thompson*, 394 U.S. 618, 634 (1969); *Dunn v. Blumstein*, 405 U.S. 330, 338–39 (1972). The right to travel within the United States, however, differs from the right to travel internationally — only the latter of which the revocation of a passport restricts.

A review of relevant Supreme Court cases suggests that infringements on the freedom of international travel merit lesser scrutiny than restrictions on domestic travel. In a series of cases in the mid-twentieth century, the Court employed language seeming to equate international and interstate travel, but the Court never expressly held that international travel constituted a fundamental right. *See Kent v. Dulles*, 357 U.S. 116, 125–26 (1958) (noting the "right to travel is part of the 'liberty' of which the citizen cannot be

ORDER – PAGE 20

deprived without due process of law under the Fifth Amendment"); *Aptheker v. Secretary of State*, 378 U.S. 500, 517 (1964) (musing that "freedom of travel is a constitutional liberty closely related to rights of free speech and association"); *Zemel v. Rusk*, 381 U.S. 1, 15–16 (1965) (comparing international and interstate travel to the extent that the government may impinge on either freedom in the face of adequately compelling national security interests). In subsequent cases, the Court distanced itself from the language in these earlier decisions that treated "the right to travel within the United States and the right to travel abroad . . . indiscriminately," noting that any equivalence had "been rejected in subsequent cases." *Regan v. Wald*, 468 U.S. 222, 241 n.25 (1984) (citing *Haig*, 453 U.S. at 306 and *Califano v. Aznavorian*, 439 U.S. 170, 176–77 (1978)).  After examining this line of cases, a few things become clear.  First, nearly all the discussion of the relationship between international and domestic travel can be construed as dicta, cautioning against relying unduly on any one case.  Second, holistic review of the cases reveals a big-picture trend toward a meaningful distinction between interstate and international travel.  The former observation increases the relative importance of the latter in deducing the level of protection that the Court should afford international travel.  Accordingly, the Court concludes that in the face of a clear trend against such a conclusion, the right to international travel is not fundamental.

Other Circuits have refused to find a fundamental right to international travel. Reviewing a Rule 12(b)(6) dismissal of a nearly identical challenge to the FAST Act's passport revocation provisions, the Tenth Circuit applied the rational basis test in affirming the District Court.  *Maehr v. U.S. Dep't. of State*, 5 F.4th 1100, 1119 (10th Cir. 2021).

ORDER – PAGE 21

Likewise, the Ninth Circuit upheld a similar passport revocation law (this one targeting individuals who had failed to make child-support payments) after subjecting the law to rational basis review. *Eunique v. Powell*, 302 F.3d 971, 974 (9th Cir. 2002). With an eye toward the work done by those who have already tread this ground and cognizant of the Supreme Court's admonition that courts hesitate before expanding the scope of substantive due process, the Court holds that the infringement of the right to international travel merits rational basis review.

A challenged statute subject to rational basis review will survive so long as the Court can find a reasonable fit between the legitimate purpose and the means chosen to achieve it. Importantly, the Court can handle this task at this stage of the proceedings because the interest advanced to "show rationality need not be the actual or proven interest" motivating the statute. *Reyes*, 861 F.3d at 563. In other words, the Court may accept the Government's contentions so long as some connection exists "between the policy effected by the statute and a 'conceivable' interest." *Id.* (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 175 (5th Cir. 1996)).

The FAST Act passes the test. Few interests exceed the efficient and timely collection of taxes in importance — without the predictable revenue generated by taxes the Government would risk failing to satisfy its debts, destabilizing the entire dollar-denominated financial system. This interest motivated Congress to adopt provisions such as the AIA and tax exception to the DJA. The previously discussed GAO report lays out in detail the case for conditioning the benefit of a U.S. Passport on tax compliance, suggesting that such a policy could improve the collection of known, unpaid tax liabilities.

This would, in turn, improve the predictability of the Government's revenue stream. Accordingly, the Court holds that the FAST Act has a rational basis and dismisses Franklin's constitutional challenge for failure to state a claim.

### V. THE COURT DENIES FRANKLIN'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Franklin asks for attorney's fees and costs, invoking three independent statutory bases for the request. Having filed a FOIA request for documents related to his case, Franklin alleges that the IRS wrongfully withheld certain documents until finally producing them in response to his original complaint. He requests attorney's fees and costs under the provision of FOIA authorizing courts to make such an award to an individual who has succeeded, through litigation, to compel an agency to make a production of documents. Alternatively, Franklin request fees and costs under a provision of the Tax Code and under 28 U.S.C. § 2412. The Court denies the request on all grounds.

FOIA authorizes courts to grant attorney's fees and costs to prevailing litigants. 5 U.S.C. § 552(a)(4)(E). This provision "divides the attorney-fee inquiry into two prongs[:] . . . fee eligibility and fee entitlement. The eligibility prong asks whether a plaintiff has substantially prevailed and thus may receive fees. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees." *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013) (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)).

An agency's voluntary change in position can give rise to a finding that the plaintiff substantially prevailed. A plaintiff can demonstrate eligibility for attorney's fees by

securing a court order or by showing that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information. *Id.* (quoting *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980)).  In other words, if the plaintiff can show "voluntary or unilateral change in position by the agency" primarily resulting from the litigation, then the plaintiff can demonstrate eligibility for fees and costs.  5 U.S.C. § 552(a)(4)(E).

Two years prior to the commencement of this case, Franklin requested all information related to the tax penalties from the IRS.  Pl.'s Am. Compl. ¶ 5.  In response, the IRS produced documents, attesting full compliance with the request.  *Id.*  In response to Franklin's original complaint instigating this proceeding, however, the IRS produced a new document purporting to show compliance with section 6751(b) of the Tax Code.  *Id.* ¶ 14, n.1.

Based on this factual background, Franklin can demonstrate eligibility under this standard.  As it must at this stage, the Court takes as true Franklin's allegations that his request unambiguously requested the withheld document, that he attempted to clarify that the IRS had fully complied, and that he made other attempts to obtain documentary proof of the IRS's procedural compliance before instituting this proceeding.  The Government does not seriously dispute any of these allegations or provide any reason why the IRS failed to make the disclosure.  From this, the Court infers that the IRS would not have disclosed the information absent this proceeding.  Thus, the Court holds that Franklin can show his eligibility under 5 U.S.C. § 552(a)(4)(E).

At the entitlement phase, however, courts retain discretion to award fees.  In this circuit, courts apply a four-prong balancing test as a guide.  The court must weigh "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Batton*, 718 F.3d at 527 (quoting *Texas v. ICC*, 935 F.2d 728, 730 (5th Cir. 1991)).

These factors weigh against awarding attorney's fees and costs in this case. Although the final factor must go against the Government because it has not advanced any justification for the failure to make the disclosure in response to the initial FOIA request, the other factors weigh more strongly against Franklin.  The first two factors largely merge: The document sought has little to no public interest value and Franklin sought it solely to use in challenging his personal tax liability.  Given the public-minded purpose of FOIA courts give less weight to suits challenging allegedly wrongful withholding of information that only has relevancy to a specific individual for that individual's pecuniary gain.  And the third factor weighs even more heavily against awarding fees and costs.  Franklin lacks a substantial interest in the records, insofar as he did not actually want the IRS to disclose the document at issue.  In fact, Franklin hoped that no such document actually existed. The *nonexistence* of such a document animates Franklin's underlying objection to the validity of the penalties, which motivated this action.  But the Court lacks jurisdiction over his attempts to litigate that issue in this proceeding.  To properly contest the validity of the assessment, Franklin must pay the penalties and pursue a refund action.  Even if the IRS had produced the document initially, Franklin would have been in the same position: He

ORDER – PAGE 25

would have had no choice but to pay the tax liabilities.  That pursuing this ill-fated action has inadvertently corrected the allegedly wrongful withholding by the IRS does not, in and of itself, warrant an award of fees and costs.

As to Franklin's request for fees and costs under 26 U.S.C. § 7430, the Court denies the request.  Section 7430 allows for an award of "reasonable litigation costs incurred in connection with" a proceeding against the United States.  26 U.S.C. § 7430(a)(1).  Likewise, 28 U.S.C. § 2412 generally permits the court to award costs and fees.  These statutes, however, allow the court to award fees and costs only to the "prevailing party." *Id.*; 26 U.S.C. § 7430(a)(1).  Having dismissed all of Franklin's claims, the Court may not award fees and costs.

CONCLUSION

Based on the foregoing, the Court determines that it lacks jurisdiction over Franklin's section 6751(b) claims and his Eighth Amendment challenge.[5]  The Court also dismisses his Fifth Amendment challenge for failure to state a claim and declines to award fees and costs.

Signed September 29, 2021.

David C. Godbey
United States District Judge

---

[5] The Court notes that Franklin did not seek leave to amend in his response to the Government's motion to dismiss.